UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

JOHN GREEN,

  Plaintiff,

 v.

UNITED STATES OF AMERICA, *et al.*,

  Defendants.

Action No. 6:11-CV-00059-HRW

**MEMORANDUM OPINION
AND ORDER**

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

John Green is an inmate confined in the United States Penitentiary-McCreary in Pine Knot, Kentucky. Green, proceeding without an attorney, filed a civil rights complaint asserting various constitutional claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and negligence claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. [D. E. No. 2][1]

Because the Court has granted Green's motion to pay the filing fee in installments [D. E. No. 10] and because he is asserting claims against government officials, the Court screens his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. These sections require a district court to dismiss any claims that are frivolous

---

[1] The defendants are (1) the United States of America; (2) Eric D. Wilson, former Warden, USP-McCreary; (3) Terry Browder, Case Manager, USP-McCreary; (4) Jimmy Pittman, Unit Manager, USP-McCreary; (5) "P." Reach, Unit 2-A Counselor, USP-McCreary; (6) "C." Eichenlaub, Regional Director, Bureau of Prisons ("BOP") Mid-Atlantic Regional Office ("MARO"), (7) Harrell Watts, BOP General Counsel; and (8) Michelle Fuseymore, BOP Regional Counsel.

or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

I

Green alleges that between October 2007 and March 3, 2010, he was assigned to the lower bunk in his cell. On March 3, 2010, another inmate, Reyes Pena, arrived in the cell and told Green that BOP Case Manager Terry Browder had assigned him to the lower bunk bed in that cell. When Green told Officer Settles of the conflicting assignments to the lower bunk bed, Settles told Green that he could not do anything about it because defendants Browder, Pittman, and Reach had already left for the day. Pena took the upper bunk that night.

The next day, Green informed Unit Manager Pittman that both he and Pena had been assigned the same lower bunk bed. Green also alleges that he told Pittman that he and Pena were incompatible, and that Pena did not understood or speak English. Green alleges that Pittman promised him that he would reassign Pena to a different cell, but that this never happened. [D. E. No. 2 at 4] On March 5 or 6, 2010, the Inmate Roster still listed both Green and Pena as the occupants of the same lower bunk bed. On March 11, 2010, Green's lower bunk bed pass was renewed. Approximately two weeks later, Pena accused Green of sleeping in "his" lower bunk

2

bed, and struck Green over his right eye using a lock hanging from a piece of string.

After officers restrained Pena, Green was treated for his eye injury, which required

seven stitches.

Green then filed an inmate grievance because of the assault. In his grievances

Green reiterated the same claim at each level of the administrative review process:

> Prison staff exposed me to another prisoner who they knew, or should
> have known, was dangerous and suffered mental problems. The staff
> placed this individual in my cell with a lower bunk pass knowing that I
> also had a lower bunk pass which precipitated this dispute. My injuries
> were the proximate result of my being exposed to this individual. Prison
> staff were deliberately indifferent to the situation and failed to correct
> a known problem.

[D. E. No. 2-4 at 6, 13, 8, 15]  The BOP denied Green's initial grievance and his

appeals, concluding that prison staff had followed appropriate procedures when

assigning cells.  [*Id.*, at 9]

On May 27, 2010, Green requested administrative settlement of his claim

against the BOP under the FTCA.  [*Id.* at 1]  The BOP acknowledged receipt of the

claim on July 1, 2010, [*Id.* at 3] but Green alleges that it never made a final decision

on his FTCA claim.  [D. E. No. 9]

In his complaint, Green alleges that the defendants should have removed Pena

from his cell after he informed them of the conflict between the two, and that their

failure to do so constituted cruel and unusual punishment in violation of the Eighth

Amendment and violated the due process clause of the Fifth Amendment. Green also seeks compensation for the defendants' alleged negligence under the FTCA.

II

Green does not indicate whether he wishes to sue the named defendants in their individual or official capacity. However, any official capacity claim against a defendant would fail as a matter of law, as *Bivens* only authorizes an action against a federal official in his or her individual capacity. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011).

Any individual capacity claim under *Bivens* fails as a matter of law against all but one defendant. The Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This includes "a duty to protect prisoners from violence at the hands of other prisoners[,] and to protect inmates from unreasonable conditions that pose 'a substantial risk of serious harm.'" *Id.* at 833-34. To establish a violation of this duty, the prisoner must establish that the official was "deliberately" indifferent to his health or safety, meaning that he or she was subjectively aware of a serious risk of harm to the prisoner, and consciously chose to disregard it. *Farmer*, 511 U.S. at 837. This standard requires that the official be aware of the risk before the assault at the hands of the other inmate. *Cf. Browning v. Pennerton*, 633 F. Supp. 2d 415, 423

4

(E.D. Ky. 2009).

Here, Green alleges that he informed defendant Pittman of his conflict with inmate Pena prior to the assault, [D. E. No. 2 at 4] but he makes no allegation that any of the other defendants had any reason to know that Pena was likely to assault him. Defendants Reach, Wilson, Eichenlaub, and Watts responded to Green's inmate grievances after the assault had already occurred; likewise, defendant Fuseymore responded to his request for administrative settlement under the FTCA. It is well established that merely responding to an inmate grievance is not the kind of personal involvement with the underlying conduct that may subject that individual to constitutional liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999); *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."). Defendants Browder and Reach were only involved after Green was assaulted. As they had no notice of Pena's conflict with Green until after the fact, there is no basis to impose liability on them under the Eighth Amendment. *Bates v. Elwood*, 2008 WL 2783190, at *8-9 (E.D. Ky. 2008).

With respect to defendant Pittman, Green alleges that he told Pittman of his conflict with Pena before the assault, but that Pittman did not remove one of the inmates from the cell or otherwise act to avoid a confrontation. Pittman will be

5

required to respond to Green's Fifth and Eighth Amendment claims.

To the extent that Green asserts a due process claim under the Fifth Amendment against Reach, Wilson, Eichenlaub, Watts, and Fuseymore based upon their denial of his administrative grievances, those claims fail as a matter of law. Green had no constitutionally protected liberty interest in an effective grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Overholt v. Unibase Data Entry, Inc.*, 2000 WL 799760, at *3 (6th Cir. 2000).

Finally, Green appears to have administratively exhausted his claim under the FTCA because he alleges that the BOP has not responded to it within the time period permitted by 28 U.S.C. § 2675(a). The United States will be required to respond to Green's FTCA claims.

Accordingly, **IT IS ORDERED** as follows:

(1)     Plaintiff John Green's official capacity constitutional claims against all named defendants are **DISMISSED WITH PREJUDICE**;

(2)     Green's Fifth and Eighth Amendment claims against Defendants "P." Reach, USP- McCreary Counselor; Eric Wilson, former Warden, USP-McCreary; Terry Browder, USP-McCreary Case Manager; "C."Eichenlaub, BOP Regional Director; Darrell Watts, BOP General Counsel; and Michelle Fuseymore, BOP Regional Counsel, are **DISMISSED WITH PREJUDICE**;

6

(3)     Defendant Jimmy Pittman, USP-McCreary Unit Manager, is directed to respond to Green's Fifth and Eighth Amendment claims, and the Clerk of the Court shall issue summons for Defendant Pittman in his individual capacity;

(4)     The United States shall respond to Green's FTCA claims, and the Clerk of the Court shall prepare and issue a summons for the United States to respond to the Complaint, [D. E. No. 2], and attachments;

(5)     In addition to the summons, the Clerk shall make four sets of copies of the summons and mark one set to be served on the United States Attorney General; one set to be served on the United States Attorney for the Eastern District of Kentucky; one set to be served on the BOP; and one set to be served on Officer Jimmy Pittman;

(6)     The Clerk shall also prepare as many copies of the Complaint [D. E. No. 2] and this Memorandum Opinion and Order as there are summonses and any required United States Marshals Service ("USMS") Forms 285.   If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any Defendant, the Clerk shall promptly make a Clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service;

(7)     After the Clerk's Office has prepared the copies of the summons, USM

7

Forms 285, copies of the Complaint and this Memorandum Opinion and Order, a Deputy Clerk shall deliver these documents by certified mail, return receipt requested, to the USMS Office in Lexington, Kentucky;

(8)     The Deputy Clerk making the delivery to the USMS Office shall enter the time and fact of the delivery into the record;

(9)     The USMS shall serve the copies of the summons, Complaint [R. 2] and this Memorandum, Opinion and Order, on the United States Attorney General in Washington, D.C.; on the United States Attorney for the Eastern District of Kentucky; and on the Federal Bureau of Prisons, each to be served by certified mail, return receipt requested;

(10)   The USMS shall serve the summons, Complaint [D. E. No. 2] and this Memorandum, Opinion and Order, on Officer Jimmy Pittman by personal service upon Pittman at the United States Penitentiary-McCreary in Pine Knot, Kentucky through arrangement with the Federal Bureau of Prisons;

(11)   Green shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case; and

(12)   For every further pleading or other document Green submits for consideration, he shall serve upon each Defendant, or, if appearance has been entered

8

by counsel, upon each attorney, a copy of the pleading or other document. Green shall send his original papers to the Clerk of the Court together with a certificate stating the date on which he mailed a true and correct copy of the document to each defendant or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the Court will disregard the document.

This 11th day of June, 2012.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge